[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] OPINION
This is a consolidated appeal of two cases by the appellant, Yolanda Glenn, from the judgment entries rendered by the Allen County Court of Common Pleas, Juvenile Division, which awarded permanent custody of her two minor children, Antrail, born March 6, 1991,[1] and Auntionna, born December 18, 1992,[2] to the Allen County Children Services Board ("ACCSB").[3]
ACCSB's first contact with this family was in 1993, and thereafter, on October 6, 1993, the record discloses that the children were placed in foster care. The record also discloses that the initial case plan which was developed at that time required a drug and alcohol assessment, stable housing, and parenting classes. Subsequently, on December 1, 1995, ACCSB initiated this case by filing a complaint for permanent custody of the children. However, upon the consent of the parties, the juvenile court held that these children were dependent and ACCSB was granted temporary custody. The goal of the case plan filed was reunification. Some of the appellant's case plan requirements included stable housing, a drug and alcohol assessment with any recommended counseling, and another course of parenting classes. Additionally, appellant was to be involved in Antrail's behavioral counseling at Tri-Star, as requested by his counselor.
On October 31, 1996, a motion for permanent custody was filed by ACCSB. However, ACCSB thereafter requested leave to withdraw that motion and instead sought an extension of temporary custody of the children. The juvenile court granted these requests and further determined that the children continue in temporary custody with ACCSB. The amended case plan which was filed essentially continued the one already in place for appellant. On May 1, 1997, a second motion to extend temporary custody was filed by ACCSB, which the juvenile court granted. The amended case plan filed continued the same plan requirements for appellant.
On October 8, 1997, ACCSB filed another motion for permanent custody of both children. The hearing on this motion was held on January 20, February 13, and April 21, 1998. The juvenile court granted permanent custody of both children to ACCSB.
Appellant now appeals from the juvenile court's decision and raises the following three assignments of error:
 The trial court erred in awarding permanent custody to Allen County Children Services when clear and convincing evidence did not exist to support that finding, nor did the Guardian Ad Litem recommend that Allen County Children Services have permanent custody.
 The trial court erred in granting permanent custody to Allen County Children Services, absent a determination, by clear and convincing evidence that one of the eight factors, outlined in O.R.C. Section [2151.414(E)] exists.
 The trial court erred in granting permanent custody to Allen County Children Services when the board did not use reasonable case planning nor diligent efforts at reunification with the parents.
In these assignments of error, appellant argues that the record does not contain clear and convincing evidence to support the juvenile court's decision to terminate her parental rights. Appellant additionally argues that none of the statutory factors enumerated in R.C. 2151.414(E) were proven by clear and convincing evidence. Appellant further argues that based on the evidence presented, it has not been established that ACCSB used reasonable case planning nor diligent efforts at reunification with the appellant.
Pursuant to R.C. 2151.414(B), the juvenile court may grant permanent custody to ACCSB if the court determines by clear and convincing evidence that it is in the best interest of the child to do so and if the court determines that "* * * the child cannot be placed with either of the child's parents within a reasonable time or should not be placed with the child's parents[.]" In determining whether a child cannot or should not be placed with either parent within a reasonable time, R.C. 2151.414(E) requires that the court consider all relevant evidence, finding by clear and convincing evidence, that one or more of the enumerated factors exist that would prohibit placement of the child with one of his parents. These factors include:
 (1) Following the placement of the child outside the child's home and notwithstanding reasonable case planning and diligent efforts by the agency to assist the parents to remedy the problems that initially caused the child to be placed outside the home, the parent has failed continuously and repeatedly to substantially remedy the conditions causing the child to be placed outside the child's home. In determining whether the parents have substantially remedied those conditions, the court shall consider parental utilization of medical, psychiatric, psychological, and other social and rehabilitative services and material resources that were made available to the parents for the purpose of changing parental conduct to allow them to resume and maintain parental duties.
 (2) Chronic mental illness, chronic emotional illness, mental retardation, physical disability, or chemical dependency of the parent that is so severe that it makes the parent unable to provide an adequate permanent home for the child at the present time and, as anticipated, within one year * * *;
* * *
 (4) The parent has demonstrated a lack of commitment toward the child by failing to regularly support, visit, or communicate with the child when able to do so, or by other actions showing an unwillingness to provide an adequate permanent home for the child;
* * *
 (9) The parent for any reason is unwilling to provide food, clothing, shelter, and other basic necessities for the child * * *[.]
Since ACCSB's involvement in this case, the record reveals that appellant has had six different residences where she has lived with her sister and one other child or her girlfriend and two other children. Appellant's amended case plan required her to establish stable housing which would accommodate herself and her children. On two occasions that the caseworker visited appellant, she found the housing arrangement to be unsuitable for the return of appellant's children because the home was not large enough to accommodate two families. At the time of the second permanent custody hearing in February 1998, appellant had just been approved for subsidized housing, and, consequently, she had only moved into a two-bedroom apartment several days before the hearing resumed. However, appellant's caseworker indicated that she had discussed housing options with appellant on more than one occasion and further had provided her with information and a referral regarding Met Housing. The caseworker had also provided appellant with a letter which she could use for the purpose of obtaining subsidized housing.
Appellant's amended case plan also included a requirement that she attend another parenting class program despite her prior attendance to such classes in 1995. Appellant did not complete the parenting program again as recommended. According to appellant, she felt that since she had previously attended parenting classes she simply did not have to attend these classes. At the time of the final hearing in this matter, appellant indicated that she would now do so.
We also note that it was recommended that appellant become involved with the behavioral counseling sessions being provided to Antrail during the course of this case. Although appellant acknowledged that she had been asked by the caseworker to attend Antrail's counseling sessions during 1997, appellant only recently became involved since the second hearing date in February 1998. As explained by Antrail's therapist, the parents were to be enlisted into the child's therapy so that they would know how to counteract and redirect his behavior problems.
The caseworker testified that there was an alcohol assessment completed, but then testified that appellant did not follow through with the recommended counseling. It appears that the counselor's report dated October 1997 to the caseworker diagnosed appellant with alcohol dependency. At the February hearing, appellant acknowledged that she had a problem with alcohol, but also testified that she has not been drinking since November 1997. Appellant's sister and a friend confirmed the same. However, according to the caseworker assigned to this case, she did not know of appellant's whereabouts after October 27, 1997 to even monitor appellant's progress until after the first permanent custody hearing was held.
The record also reveals that during the two-year period from September 14, 1995, appellant came to thirty-nine supervised visits with her children, although one hundred and two visits would have been available. Appellant acknowledged that she missed these weekly visits with her children, but explained that one reason for missing was because she was expected to confirm each visit with ACCSB. Even though appellant may have attempted to confirm her visits with ACCSB, she also admitted that she had a problem of oversleeping. Appellant further explained about her fifty-four day jail term in 1997 and her brief jail time in January 1998. According to the ACCSB aide who supervised most of appellant's visits with her children, appellant did not seem to bond with them. It was the opinion of both this aide and another caseworker who monitored the visits that appellant has difficulty interacting appropriately with the children and with proper discipline.
Based upon the record in this case, the juvenile court found that clear and convincing evidence established that appellant failed to substantially remedy the conditions which caused the children's removal from the home, that she is unable to provide an adequate permanent home for the children because of chronic alcohol dependency, that appellant has demonstrated a lack of commitment toward the children, and that appellant is unwilling to provide food, clothing, shelter and other basic necessities for either child. Additionally, the court found that ACCSB has worked with appellant to remedy the former problems. Evidence was presented as to appellant's residences and that she had not yet obtained adequate housing before the first hearing in January 1998. An assessment established that appellant suffers from alcohol dependency. Appellant did not follow through on the recommended counseling, and the fact that she no longer has been drinking does not necessarily show that she is cured from alcohol dependency. Further, the record shows that appellant missed almost forty percent of the weekly visits with her children during a two-year period. Nor has appellant participated in the counseling being provided to Antrail during the course of this case.
Finally, the juvenile court made some specific factual findings relating to the recommendation of the guardian ad litem that ACCSB not be granted permanent custody. Because the guardian ad litem was basing his recommendation on appellant's recent behavior, it seems that the court did not agree with him. Despite the fact that appellant was given the two extensions on her goal dates, the record shows that appellant's motivation about her family has only recently changed. In fact, the record discloses that the children have been removed from her care since 1993.
Thus, based on our review of the record, we find that the record contains clear and convincing evidence to support the juvenile court's permanent custody determinations under R.C.2151.414. Accordingly, all of the appellant's assignments of error are overruled, and the judgments of the juvenile court are affirmed.
Judgments affirmed.
 BRYANT and HADLEY, JJ., concur.
[1] Antrail's adjudicated father was also a party in the termination proceeding, but he has not appealed the judgment of the juvenile court.
[2] The record indicates that Auntionna's alleged father's whereabouts were unknown at the time of the decision of the juvenile court.
[3] We note that these cases were also consolidated for hearing in the juvenile court. Because the records in both cases are similar, we will refer to all single proceedings for purposes of this appeal.